UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY DIVISION

| | |
|---|---|
| (1) BRIAN BOND, Individually and For Others Similarly Situated<br><br>v.<br><br>(1) DEVON ENERGY CORPORATION | Case No.   CIV-23-347-HE<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Brian Bond (Bond) brings this collective action lawsuit to recover unpaid overtime wages and other damages from Devon Energy Corporation (Devon Energy) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Bond worked for Devon Energy as a Drilling Consultant.[1]

3. Bond and the Day Rate Workers (as defined below) regularly work for Devon Energy in excess of 40 hours each week.

4. But Devon Energy never paid Bond and the Day Rate Workers overtime.

5. Instead of paying Bond and the Day Rate Workers overtime, Devon Energy classified these workers as independent contractors and paid them a flat amount for each day worked (a "day rate") with no overtime pay for hours worked in excess of 40 hours in a workweek in violation of the FLSA.

6. Bond and the Day Rate Workers never received a guaranteed salary.

---

[1] In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

7. This collective action seeks to recover unpaid overtime wages and other damages owed to Bond and the Day Rate Workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has general personal jurisdiction over Devon Energy because Devon Energy maintains its principal place of business and headquarters in Oklahoma City, Oklahoma.

10. Venue is proper because Devon Energy maintains its headquarters in Oklahoma City, Oklahoma, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

11. Bond worked for Devon Energy as a Drilling Consultant from approximately June 2021 until July 2022.

12. Throughout his employment, Devon Energy classified Bond as an independent contractor and paid him a day rate with no overtime compensation.

13. Bond's written consent is attached as **Exhibit 1**.

14. Bond brings this action on behalf of himself and all other similarly situated Drilling Consultants who worked for, or on behalf of, Devon Energy, who were classified as independent contractors and paid on a day rate basis.

15. Devon Energy misclassified each of these workers as independent contractors and paid them a flat amount for each day worked with no overtime pay for hours worked in excess of 40 hours in a workweek in violation of the FLSA.

16. The FLSA Collective of similarly situated employees is defined as:

> **All current and former Drilling Consultants[2] who worked for, or on behalf of, Devon Energy who were classified as independent contractors and paid a day rate with no overtime at any time during the past 3 years through the present ("Day Rate Workers").**

17. Devon Energy is a Delaware corporation that maintains its headquarters in Oklahoma City, Oklahoma.

18. Devon Energy can be served with process by serving its registered agent: **C T Corporation System, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128**.

### COVERAGE UNDER THE FLSA

19. At all relevant times, Devon Energy was an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

20. At all relevant times, Devon Energy was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

21. At all relevant times, Devon Energy was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as hand tools, equipment, cell phones, computers, walkie-talkies, hardhats, and personal protective equipment – that have been moved in or produced for commerce.

22. At all relevant times, Devon Energy has had an annual gross volume of sales

---

[2] In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

made or business done of not less than $1,000,000 each year.

23. At all relevant times, Bond and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

24. Devon Energy uniformly applied its policy of misclassifying Bond and the Day Rate Workers as independent contractors and paying them a day rate with no overtime.

25. Devon Energy applied this policy regardless of any alleged individualized factors such as specific job title, project, or geographic location.

26. By paying Bond and the Day Rate Workers a day rate with no overtime, Devon Energy violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at rates not less than 1.5 times their regular rates of pay for hours worked in excess of 40 in a workweek.

27. As a result of Devon Energy's day rate pay policy, Bond and the Day Rate Workers do not receive overtime pay in violation of the FLSA.

28. Devon Energy's uniform compensation scheme of paying Bond and the Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

29. Devon Energy treated Bond and the Day Rate Workers as employees and uniformly dictated the pay and other employment practices it applied to Bond and the Day Rate Workers.

30. Devon Energy's misclassification of Bond and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

## THE FACTS

31.  Devon Energy bills itself as "a leading independent oil and natural gas exploration and production company"[3] with operations across the United States.[4]

32.  To meet its business objectives, Devon Energy hires Drilling Consultants (including Bond and the Day Rate Workers) to perform drilling services and oversee the drilling of its wells to ensure the operations are completed in accordance with Devon Energy's Well Plan, Drilling Procedure, specifications, policies, and expectations.

33.  Devon Energy uniformly misclassifies these Drilling Consultants (including Bond and the Day Rate Workers) as independent contractors to avoid paying them overtime.

34.  But Devon Energy does not hire these workers (including Bond and the Day Rate Workers) on a project-by-project basis.

35.  Rather, Devon Energy hires and treats these workers (including Bond and the Day Rate Workers) just like regular employees.

36.  Many of these workers worked for Devon Energy on a day rate basis (without overtime pay).

37.  While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

38.  For example, Bond worked for Devon Energy as a Drilling Consultant from approximately June 2021 until July 2022.

---

[3] https://www.devonenergy.com/about-us (last visited April 24, 2023).

[4] https://www.devonenergy.com/operations (last visited April 24, 2023).

39. Throughout his employment, Bond was paid on a day rate basis and did not receive overtime pay when he worked in excess of 40 hours in a week.

40. Specifically, Bond received approximately $1,500 to $1,600 for each day he actually worked, regardless of the number of hours he worked in a day or workweek:

| Description | Qty | Amount | | | | RATE TOTAL |
|---|---|---|---|---|---|---|
| Daily Rate | 17 | Days @ $ | 1,395.00 | Per Day | = | $ 23,715.00 |
| Travel Day Rate | | Days @ | | Per Day | = | $ - |
| Hourly Rate | | Hours @ $ | - | Per Hour | = | $ - |
| Daily Bonus | 17 | Days @ $ | 200.00 | Per Day | = | $ 3,400.00 |

41. In approximately April 2022, Devon Energy began attempting to disguise its illegal day rate pay scheme as an hourly pay plan.

42. In reality, however, Devon Energy's disguised day rate pay scheme is based on a flat 16-hour day, regardless of the actual number of hours Bond and the Day Rate Workers actually work:

| DATES WORKED | RT HOURS | OT HOURS | TRAVEL INCENTIVE | DAILY INCENTIVE |
|---|---|---|---|---|
| April 27, 2022 | 16 | | | $200.00 |
| April 28, 2022 | 16 | | | $200.00 |
| April 29, 2022 | 8 | 8 | | $200.00 |
| April 30, 2022 | | 16 | | $200.00 |
| May 1, 2022 | | 16 | | $200.00 |
| May 2, 2022 | | 16 | | $200.00 |
| May 3, 2022 | | 16 | $1,500.00 | $200.00 |

43. Thus, under both its day rate pay schemes, Devon Energy paid Bond and the Day Rate Workers a flat sum for each day worked, regardless of the number of hours they

6

worked that day (or in that workweek) and failed to pay them overtime when they worked in excess of 40 hours in a workweek.

44. Devon Energy does not pay Bond and the Day Rate Workers a guaranteed salary.

45. Devon Energy only pays Bond and the Day Rate Workers their set day rate for the actual days they worked.

46. If Bond and the Day Rate Workers did not work, they did not get paid.

47. Thus, Bond and the Day Rate Workers are not paid on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. ---, 143 S.Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

48. Bond and the Day Rate Workers are paid on a day rate basis (without overtime).

49. Bond and the Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

50. Bond and the Day Rate Workers do not receive overtime pay when they work more than 40 hours in a week.

51. This is despite the fact Bond and the Day Rate Workers regularly work overtime.

52. Bond and the Day Rate Workers work in accordance with the schedule set and controlled by Devon Energy.

53. For example, throughout his employment, Bond typically worked 12-20 hours a day, for up to 7 days a week.

54. Thus, Bond typically worked 84-140 hours a week, well in excess of the 40-hour threshold for overtime compensation.

55. Bond's work schedule is typical of the Day Rate Workers.

56. Although Bond and the Day Rate Workers typically work 12-20 hours a day, for up to 7 days a week, they do not receive any overtime compensation for the hours they work in excess of 40 hours in a workweek.

57. Bond and the Day Rate Workers received their day rate regardless of the number of hours they worked in a day or week, even when they worked more than 40 hours in a workweek.

58. Devon Energy knows Bond and the Day Rate Workers work for 12-20 hours a day, for up to 7 days a week because Devon Energy requires them to do so.

59. Devon Energy's records reflect the fact that Bond and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

60. But Devon Energy does not pay Bond or the Day Rate Workers overtime compensation at rates not less than 1.5 times their regular rates of pay for hours worked in excess of 40 in any of those weeks.

61. Instead, Devon Energy pays Bond and the Day Rate Workers on a day rate basis.

62. Bond and the Day Rate Workers are not employed on a salary basis.

63. Bond and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from Devon Energy irrespective of the number of days worked (i.e., the

8

only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

64. Devon Energy's policy of paying Bond and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Bond and the Day Rate Workers of overtime pay at rates not less than 1.5 times their regular rates of pay for the hours they work in excess of 40 hours in a workweek.

65. Despite uniformly misclassifying Bond and the Day Rate Workers as independent contractors, Devon Energy controls all meaningful aspects of these workers' jobs.

66. Devon Energy controls Bond and the Day Rate Workers' rates and methods of pay.

67. Devon Energy controls Bond and the Day Rate Workers' schedules and assignments.

68. Devon Energy controls Bond and the Day Rate Workers' work.

69. Devon Energy requires Bond and the Day Rate Workers to follow Devon Energy's policies, procedures, drill plan, and specifications.

70. Bond and the Day Rate Workers' work must strictly adhere to the quality standards put in place by Devon Energy.

71. Bond and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

72. Indeed, the daily and weekly activities of Bond and the Day Rate Workers are routine and largely governed by standardized plans, procedures, and checklists created by Devon Energy.

73. Virtually every job function is predetermined by Devon Energy, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

74. Devon Energy prohibits Bond and the Day Rate Workers from varying their job duties outside the predetermined parameters and requires Bond and the Day Rate Workers to follow Devon Energy's policies, procedures, and directives.

75. For example, as Drilling Consultants, Bond and the Day Rate Workers' primary responsibilities included ensuring that Devon Energy's well and drilling projects are safely completed in accordance with Devon Energy's Well Plan, Drilling Procedure, specifications, policies, and expectations.

76. Devon Energy prohibited Bond and Day Rate Workers from straying from Devon Energy's procedures, plan, and specifications.

77. Without the job performed by Bond and the Day Rate Workers, Devon Energy would not be able to complete its business objectives of acquiring and developing oil and gas assets.

78. Bond and the Day Rate Workers relied on Devon Energy for work and compensation.

79. Bond and the Day Rate Workers cannot subcontract out the work they are assigned by Devon Energy.

80. Bond and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

81. Rather, Devon Energy incurred the large-scale business and operating expenses like payroll, marketing, jobsites, drilling equipment, tools, and materials.

82. Bond and the Day Rate Workers did not market their services while employed by Devon Energy.

83. Devon Energy set Bond and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working for Devon Energy.

84. Indeed, Bond and the Day Rate Workers are required to travel and live at or near their assigned jobsites during their hitches.

85. At all relevant times, Devon Energy maintained control, oversight, and direction of Bond and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

86. Bond and the Day Rate Workers do not have the power to hire, fire, or discipline any Devon Energy employees.

87. Devon Energy is aware, or should have been aware, that it was subject to the FLSA, including its overtime requirements.

88. Devon Energy is aware, or should have been aware, that the FLSA required it to pay Bond and the Day Rate Workers overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

89. Devon Energy is aware, or should have been aware, that Bond and the Day Rate Workers were, as a matter of economic reality, its employees and, therefore, entitled to overtime pay.

90. Devon Energy is aware, or should have been aware, that Bond and the Day Rate Workers were non-exempt from the FLSA's overtime provisions and, therefore, entitled to overtime pay.

91. Devon Energy is aware, or should have been aware, that Bond and the Day Rate Workers regularly worked more than 40 hours in a workweek because it expected and required these workers to do so.

92. Devon Energy knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

93. Nonetheless, Devon Energy did not pay Bond and the Day Rate Workers overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

94. Devon Energy knowingly, willfully, or in reckless disregard carried out its illegal contractor misclassification scheme that deprived Bond and the Day Rate Workers of overtime compensation in violation of the FLSA.

95. Devon Energy's failure to properly classify Bond and the Day Rate Workers as employees was neither reasonable, nor was the decision not to classify these workers as employees made in good faith.

96. Devon Energy knowingly, willfully, or in reckless disregard carried out this illegal day rate pay scheme that deprived Bond and the Day Rate Workers of overtime compensation in violation of the FLSA.

97. Devon Energy's failure to pay overtime compensation to Bond and the Day Rate Workers was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

98. Bond realleges and incorporates all other paragraphs by reference.

99. Bond brings his FLSA claims as a collective action pursuant to § 216(b) of the FLSA.

100. Numerous individuals were victimized by Devon Energy's pattern, practice, and policy of misclassifying its Drilling Consultants, including Bond and the Day Rate Workers, as independent contractors and paying them a day rate with no overtime for hours worked in excess of 40 hours in a workweek, which is in willful violation of the FLSA.

101. Numerous other individuals, like Bond, indicated they were classified and paid in the same manner and were deprived overtime compensation for all hours worked in excess of 40 hours in a workweek as required by the FLSA.

102. Based on his experience and tenure with Devon Energy, Bond is aware that the illegal policies and practices Devon Energy imposed on him were likewise imposed on the Day Rate Workers.

103. Devon Energy's failure to pay Bond and the Day Rate Workers overtime wages at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

104. The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

105. Bond has no interest contrary to, or in conflict with, the Day Rate Workers.

106. Like each Day Rate Worker, Bond has an interest in obtaining the unpaid overtime wages owed to them under federal law.

107. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

108. Absent this collective action, many Day Rate Workers likely will not obtain redress for their injuries, and Devon Energy will reap the unjust benefits of violating the FLSA.

109. Even if some of the Day Rate Workers could afford individual litigation against Devon Energy, it would be unduly burdensome to the judicial system.

110. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide judicial consistency.

111. The questions of law and fact that are common to Bond and each Day Rate Worker predominate over any questions affecting solely the individual members.

112. Among the common questions of law and fact are:

    a. Whether Bond and the Day Rate Workers were Devon Energy's "employees" within the meaning of the FLSA;

    b.    Whether Bond and the Day Rate Workers were improperly misclassified as independent contractors;

    c.    Whether, as a matter of economic reality, Bond and the Day Rate Workers, were Devon Energy's employees;

    d.    Whether Devon Energy's decision to classify Bond and the Day Rate Workers as independent contractors was made in good faith;

    e.    Whether Devon Energy's illegal pay and classification practices were applied uniformly across the nation to all Day Rate Workers;

    f.    Whether Bond and the Day Rate Workers were exempt from overtime;

    g.    Whether Devon Energy's day rate pay scheme satisfies the salary basis test;

    h.    Whether Devon Energy's decision to not pay Bond and the Day Rate Workers overtime was made in good faith; and

    i.    Whether Devon Energy's violations of the FLSA were willful.

113. Bond's claims are typical of the claims of the Day Rate Workers.

114. Bond and the Day Rate Workers sustained damages arising out of Devon Energy's illegal and uniform employment policies and practices.

115. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

116. Therefore, the issue of damages does not preclude collective action treatment.

117. Devon Energy is liable under the FLSA for failing to pay overtime to Bond and the Day Rate Workers.

118. Consistent with Devon Energy's illegal pay policy, Bond and the Day Rate Workers were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

119. As part of its regular business practices, Devon Energy intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Bond and the Day Rate Workers.

120. Devon Energy's illegal pay and classification policies deprived Bond and the Day Rate Workers of the premium overtime wages they are owed under federal law.

121. Devon Energy is aware, or should have been aware, that FLSA required it to pay Bond and the Day Rate Workers overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

122. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

123. Notice of this lawsuit should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

124. Those similarly situated workers are known to Devon Energy, are readily identifiable, and can be located through Devon Energy's business and personnel records.

## CAUSE OF ACTION
## VIOLATIONS OF THE FLSA

125. Bond realleges and incorporates all other paragraphs by reference.

126. Bond brings this claim as a collective action under the § 216(b) of the FLSA.

127. Devon Energy violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees (Bond and the Day Rate Workers) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

128. Devon Energy knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bond and the Day Rate Workers overtime compensation.

129. Devon Energy's failure to pay overtime compensation to Bond and the Day Rate Workers was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

130. Accordingly, Bond and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

131. Bond demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Bond, individually, and on behalf of the Day Rate Workers, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Day Rate Workers to permit them to join this action by filing a written notice of consent;

b. An Order finding Devon Energy liable to Bond and the Day Rate Workers for unpaid overtime compensation owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

c. A Judgment against Devon Energy awarding Bond and the Day Rate Workers all their unpaid overtime compensation, other damages, and penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
TX Bar No. 24014780
OK Fed ID 14-145
**Andrew W. Dunlap**
TX Bar No. 24078444
OK Fed ID 14-148
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**